## In re HOUGHTON WEB CO.

(District Court, D. Massachusetts. March 26, 1910.)

### No. 14,903.

1. BANKRUPTCY (§ 166*)—PREFERENCES—TRANSFERS—KNOWLEDGE OF CREDITORS.

A transfer of assets by a bankrupt to a creditor within four months prior to bankruptcy, though with intent on the bankrupt's part to prefer the creditor, is not a voidable preference, unless the creditor had reasonable cause to believe that a preference was intended, or unless the proof shows that the creditor knew or ought to have known the substantial truth concerning the bankrupt's financial condition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 255; Dec. Dig. § 166.*]

2. BANKRUPTCY (§ 303*) — PREFERENCES — INTENT TO PREFER — CREDITOR'S KNOWLEDGE—EVIDENCE.

Evidence held insufficient to sustain a finding that a creditor of a bankrupt had reasonable cause to believe that an alleged preferential transfer within four months prior to adjudication was intended as a preference by the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

In the matter of bankruptcy proceedings of the Houghton Web Company. On petition to review an order of a referee allowing the claim of the Wachusett National Bank. Affirmed.

Lyman K. Clark, trustee, pro se.
Ralph W. Robbins, for creditor.

DODGE, District Judge. The trustee's objection to the allowance of this claim is that the creditor has not surrendered, and has not been required to surrender, what he contends to have been a preference, voidable under section 60b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445])

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as amended in 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1909, p. 1315]).

The transfer claimed to have been a preference was made on February 15, 1909, within four months before the filing on May 18, 1909, of the creditor's petition whereon the adjudication in this case was made.

On February 15, 1909, the creditor bank held three notes given it by the bankrupt. Neither of the notes was then due. Two of them, each for $3,000, are the notes now offered for proof. The third note was for $1,000. It also held a note for $600, payable on demand, given it by the bankrupt January 29, 1909, and a note for $225, payable on demand, given it by the bankrupt February 4, 1909, and as collateral for the two notes last mentioned it held a note for $1,950 given the bankrupt by the American Narrow Fabric Company, a concern which had been buying from the bankrupt most of its manufactured product. At the bankrupt's request, on February 15, 1909, it discounted the note last mentioned, applying the proceeds to the payment of the two demand notes for $600 and $225 and the note for $1,000. There remained of the proceeds about $125, which it paid over to the bankrupt in cash.

About $1,825 belonging to the bankrupt was thus transferred to the creditor now seeking the allowance of its claim. It is not disputed that the bankrupt was insolvent at the time. Nor is it disputed that the effect of the enforcement of the transfer will be to enable this creditor to obtain a greater percentage of its debt than any other of such creditors of the same class. If the transfer was intended to give a preference, and the creditor had reasonable cause to believe it so intended, the trustee's objection to the allowance of the claim must prevail.

As to the bankrupt's intent, the referee's finding is that it was not only insolvent but hopelessly insolvent at the time; its condition then not differing materially from that disclosed by the schedules which it has since filed. These showed liabilities amounting to $32,378.46 in all, against assets amounting to $7,924 only. If these facts stood by themselves, they might charge the bankrupt with an intent to prefer, because of the presumption that it knew, as it ought to have known, its own insolvent condition. Though the bankrupt's officers testified before the referee that they believed it solvent at the time, the referee found that there was no ground for their belief, that they must have been absolutely mistaken, and that they must have been doing business in such a way that they did not know whether they were making or losing money. But he further found that the bankrupt's officers believed that they could continue its business and pay its debts and that their intention was to do so, though their hopefulness was not justified.

Whether or not on these facts it can properly be held that there was an actual intent on the bankrupt's part to prefer this creditor (Hardy v. Gray, 144 Fed. 922, 75 C. C. A. 562), it is clear that the creditor cannot be said to have had reasonable cause to believe such a preference was intended, unless the evidence shows that it knew.

or ought to have known, the substantial truth as to the bankrupt's financial condition. Actual knowledge of the facts on its part is not charged by the trustee. He contends that there are circumstances shown which put the bank upon inquiry and render it chargeable with the knowledge which would have been obtained by due inquiry. The circumstances relied on are as follows:

On January 15, 1909, a check for $1,595, drawn by the bankrupt upon its deposit at the bank, went to protest. The bankrupt's treasurer testified that the check was given in anticipation of funds expected to arrive before the check should be presented, that the bank had been so informed, and that the check was taken care of within a very few days. The payee of the check attached the bankrupt's deposit, but the suit and attachment were promptly disposed of.

The loan of $600 obtained January 29, 1909, was stated when it was obtained to be for the purpose of enabling the bankrupt to provide for a pay roll. The deposit of the note for $1,950 as collateral for this loan was the first instance of any loan to the bankrupt upon collateral. Upon the previous notes then held, for $7,000 in all, there was an indorser, accepted as satisfactory by the bank, who is again referred to below.

The loan of $225 obtained February 4, 1909, was also stated at the time to be for the purpose of providing for a pay roll. The note given on that occasion was not signed, as all the others had been, by the bankrupt's treasurer. In his absence it was signed by the indorser of the notes for $7,000, who was the treasurer's father-in-law and signed the note as "acting treasurer."

Later in February, 1909, apparently before February 15th, another check drawn by the bankrupt went to protest, but the amount of this check was only $10, and the matter was promptly settled by payment of that amount in cash to the payee of the check.

The treasurer's father-in-law, who indorsed the notes for $7,000, represented the bankrupt also in the transactions with the bank on February 15th. It was he who made the arrangements for the discount of the note held as collateral and the application of its proceeds, and he received on the bankrupt's behalf the balance of $125.

At the time, this bank was doing all the debtor's banking.

In the opinion of the referee the above were not "facts and circumstances with respect to the debtor's financial condition * * * such as would put an ordinarily prudent man upon inquiry," and therefore charge the bank with knowledge of all facts which such inquiry might reasonably be expected to disclose. Although satisfied that the debtor was short of funds and evidently without sufficient capital with which to do business, the referee took into account also the further facts that the bank was not pressing for payment of any of its notes, there was no apparent reason why it should have urged payment of the $1,000 note, the proposal to pay it came from the bankrupt and was accepted in the ordinary course of business, the bank did not insist, as it might have done, upon applying the $125 paid the bankrupt in cash to its remaining indebtedness, the representations made by the debtor were that it was doing a good business, running

night and day on orders, and making $400 to $500 a month, and there was no dispute that it did for a considerable time run night and day, dispose of its product, and do a good business to outward appearance.

I am unable to discover in the facts found and the evidence reported any sufficient reason for disagreeing with the referee's opinion. It is urged that the bankrupt's treasurer had no authority to pledge the note for $1,950, and that his father-in-law as "acting treasurer" had no authority to sign the note for $225 or agree that it also should be secured by the $1,950 note as collateral. The bankrupt's by-laws were offered to support this contention. The questions thus raised seem to me immaterial, as they seemed to the referee. It is urged that the agreement to pledge the $1,950 note was improvident. But, if this be true, it amounted at most to one more indication to the bank of what the other facts relied on plainly indicated to it, i. e., that the debtor was having difficulties in meeting some of its obligations as they became due.

Difficulties of that character might, of course, be of so serious a nature and might come to the bank's knowledge with such frequency that they would put the bank on inquiry as to assets and liabilities, notwithstanding the favorable indications regarding the debtor's business and financial backing, and notwithstanding the fact that there had been no failure on the debtor's part in meeting its obligations to the bank. I do not think the existence of any such state of facts is satisfactorily established by what appears in this case.

The referee's order allowing the claim is therefore approved and affirmed.